COUNCIL OF ORGANIZATIONS ON PHILADELPHIA POLICE ACCOUN-TABILITY AND RESPONSIBILITY et al., on behalf of themselves and all similarly situated, Plaintiffs,

v.

James H. J. TATE et al., Defendants.

Gerald G. GOODE et al.

v.

James H. J. TATE et al.

Civ. A. Nos. 70–2430, 70–491.

United States District Court, E. D. Pennsylvania.

Oct. 5, 1973.

Pepper, Hamilton & Scheetz by Peter Hearn, and F. John Hagele, III, Philadelphia, Pa., for plaintiffs Goode and others.

William Lee Akers, Harry Lore and Richard Axelrod, Philadelphia, Pa., for plaintiffs Council of Organizations of Philadelphia Police Accountability and Responsibility and others.

Sheldon L. Albert, Chief Deputy City Sol., John M. McNally, Jr., First Deputy City Sol., for defendants Tate and others.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

On March 14, 1973, I entered Findings of Fact and filed an Opinion, 357 F.Supp. 1289, applicable to both of the above cases, and entered Orders in each case, the effect of which was to require the defendants to formulate and submit to this Court revised procedures for handling civilian complaints against police officers, and to revise police training and instructional manuals, for the purpose of minimizing violations of the constitutional rights of citizens. The required submissions were made, and various conferences have been held, at which the views of all counsel were fully presented. Concurrently with the filing of this Memorandum, I am entering in each case a "final judgment," the principal features of which appear to be reasonably acceptable to the parties.

The issues to be resolved in this Memorandum relate to counsel fees, expenses and costs. Plaintiffs in the *Goode* case seek an award of counsel fees in the sum of $45,000, plus costs and disbursements in the sum of $4,167.58. Plaintiffs in the COPPAR case seek an award of $38,250, plus $300 in expenses.

I am satisfied that, in both cases, the Court's discretion should be exercised in favor of an award of counsel fees and expenses. The cases were brought for the vindication of constitutional rights, significant violations were established, and the plaintiffs succeeded in obtaining relief which should prove beneficial to all of the citizens of Philadelphia. The difficult question concerns the appropriate amount to be awarded.

Until the entry of this Court's Opinion and Order of March 14, 1973, the two cases were processed independently. The COPPAR plaintiffs sought sweep-

ing injunctive relief (including the appointment of a "receiver" for the Police Department), as well as damages; the *Goode* plaintiffs concentrated primarily upon obtaining improvements in the procedures for handling civilian complaints against police officers. Although both sets of plaintiffs were purporting to act on behalf of essentially the same class of plaintiffs, they proceeded independently, with different goals in mind, and with different theories as to the best way to present their respective cases. The defendants were essentially the same in both cases, and were represented throughout by the same counsel.

The defendants now assert, among other things, that the efforts of counsel were unnecessarily duplicative, and that their fees should be reduced accordingly. However, the defendants never made any attempt to obtain a consolidation of the two cases (notwithstanding occasional suggestions from the Court to that effect). Moreover, except for some duplication in argument, it appears likely that approximately the same amount of lawyer time would have been involved in any event. That is to say, there was little or no duplication in the evidence presented, or in the discovery and marshalling of evidence and pretrial preparation.

The defendants contend that counsel fees should not be awarded, or, if awarded, should be minimal, because the litigation did not achieve results as drastic as originally sought by the plaintiffs; because relief equivalent to what this Court actually granted could have been achieved at an early stage in the litigation by amicable settlement; and because many of the improvements in police routines which the plaintiffs sought were brought about by reason of a consent decree to which the defendants submitted in another lawsuit before a different judge. There is some merit in these arguments, but not much.

When the end result of this litigation is compared with the relief originally sought by the plaintiffs, it is apparent that the *Goode* plaintiffs achieved a greater degree of success than did the COPPAR plaintiffs. But the efforts of both sets of lawyers contributed substantially to the results which have been achieved. The *Goode* plaintiffs focused upon a small number of specific instances to establish the need for relief, and presented extensive evidence and argument in order to demonstrate the inadequacies of existing police procedures. The COPPAR plaintiffs, on the other hand, presented much more extensive evidence of specific instances of violations of constitutional rights, but relatively little which was helpful on the issue of the precise form of relief to be granted. This Court's determination that relief in some form should be granted was based to a significant degree upon the extensiveness of constitutional violations, as revealed by the COPPAR evidence.

Having participated actively, throughout this litigation, in various attempts to achieve an amicable settlement, this Court is in a position to evaluate the defendants' contention that most of the litigation was unnecessary. The case was vigorously contested throughout. While both sides in the *Goode* case expressed a willingness to resolve the litigation by the adoption and promulgation of revised police procedures, they never came close to agreeing upon what the changes should be. Even after this Court's Order of March 14, 1973, setting forth suggested guidelines, the parties were unable to reach agreement; and the terms of the final judgment entered by this Court differ in several important respects from the terms suggested by the defendants. In short, I am satisfied that the results achieved in this litigation would not have occurred through voluntary action on the part of the defendants, without the need for litigation.

It is correct that, as noted in my Opinion of March 14, 1973, the terms of the consent decree in the case of Alexander v. Rizzo (C.A. No. 70–992) entered

on December 18, 1972, made it unnecessary for this Court to consider certain aspects of the relief sought by the plaintiffs in the present cases. It may well be that, if the pendency of the *Alexander* litigation had been brought to the attention of this Court, or plaintiffs' counsel, some reduction in the labors of counsel in the present cases might have been achieved. But, just as defense counsel made no attempt to achieve consolidation and possible conservation of legal efforts in the present cases, they never saw fit to bring the *Alexander* case to light, and I was not aware of it until after the consent decree was entered. In short, the most that can be said is that the defendants and their counsel in the present cases may have had an opportunity to reduce the amount of legal work which was necessary on behalf of the plaintiffs in the present cases, but failed to do so.

■ Turning now to the specifics of the requests for counsel fees: Counsel for the *Goode* plaintiffs have filed a comprehensive affidavit setting forth in detail the services performed and the time consumed in its performance. They claim compensation at the rate of $45 per hour. The defendants have filed a counter-affidavit, agreeing that $45 per hour is a reasonable rate, and neither admitting nor denying the amount of time spent (1,052.5 hours). In the course of a conference in chambers, both sides expressed the view that no hearing would be required, and that the Court could properly dispose of the issue on the basis of the affidavits submitted. It further appeared that, although not in a position to concede the accuracy of plaintiffs' counsel's time records, defense counsel had no reason to doubt their accuracy and, if a hearing were held, would not challenge them. Under these circumstances, I have concluded that a hearing would be a useless formality, and that proof of the amount

of time spent is adequately supplied on the record by the affidavit of plaintiffs' counsel.

I am therefore satisfied that, if the defendants should bear the full cost of plaintiffs' counsel fees, $45,000 would be a reasonable allowance for the services rendered.

■■ In the COPPAR case, counsel have itemized the number of days of trial, the estimated amount of time spent in preparation for trial, and various other specified legal services; have computed the minimum charge for such services under the fee bill of the Philadelphia Bar Association; and have concluded that their services in this litigation, in view of its nature, importance, and complexity, should be compensated at a rate equal to double the minimum fee. I have concluded that certain discounts should be applied to the estimates submitted. While it is difficult to quantify these discounts, I have concluded that the following factors should be taken into account: (a) the same amount of work should have been done in somewhat less time than counsel apparently actually spent; (b) a considerable amount of work appears to have been devoted to objectives tangential to the actual issues involved in the litigation; and (c) no justification has been shown for evaluating counsel's services at double the suggested minimum rate. I have concluded that, if the defendants were to pay the full amount of plaintiffs' counsel fees to date in the COPPAR case, $20,000 would represent a reasonable amount for such services.

The next question is whether the defendants should be required to pay the full amount of plaintiffs' counsel fees. As discussed at length in my Opinion of March 14, 1973, the evidence in this case disclosed no conscious policy of permitting or encouraging widespread violations of constitutional rights by police

officers, and no basis for concluding that a majority of police officers commit such violations. Nevertheless, the evidence did disclose that such violations have been occurring with unacceptable frequency, and that existing police procedures are inadequate to prevent such violations. Plaintiffs' counsel have performed a valuable public service in pursuing this litigation, but punitive measures are not called for. I have concluded that awards of less than the full amount of plaintiffs' counsel fees is appropriate in these cases. Here again, I believe it necessary to draw distinctions between the two cases. The *Goode* plaintiffs were more nearly successful, and their efforts were more directly devoted to attempting to obtain a rational solution to the problem. In the COPPAR case, plaintiffs were less successful, and somewhat less sensitive to the true public interest. Moreover, the defendants are less chargeable with failure to settle the COPPAR litigation, since it is apparent that no amicable settlement along the lines ultimately specified by this Court would ever have been acceptable to these plaintiffs.

Giving due weight to all of the factors discussed above, I have concluded that plaintiffs in the *Goode* case should be awarded counsel fees in the total sum of $25,000, plus costs and disbursements in the sum of $4,167.58; and that plaintiffs in the COPPAR case should be awarded counsel fees in the total sum of $10,000, plus costs and disbursements in the sum of $250 (calculated on the basis of the amount claimed, deducting an item of $50 for briefs, findings of fact and conclusions of law). Jurisdiction will be reserved over the question of counsel fees in connection with the individual damage claims in the COPPAR case. In addition, of course, plaintiffs in both cases are free to seek further awards in the event further proceedings become necessary.